IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT LOUISIANA

| | |
|---|---|
| JANICE CLARK, *et al*,<br>　　　Plaintiffs, | CIVIL CASE: 3:86-cv-00435 |
| DONALD R. JOHNSON,<br>　　　Plaintiff-Intervenor | |
| TRUDY M. WHITE,<br>　　　Plaintiff-Intervenor | |
| GIDEON T. CARTER, III,<br>　　　Plaintiff-Intervenor | |
| 　　　Versus | |
| JEFFREY "JEFF" LANDRY, *et al*,<br>　　　Defendants | Judge John W. deGravelles<br>Magistrate Judge Scott W. Johnson |

### PLAINTIFFS' MOTION TO SUBSTITUTE AN UPDATED MEMORANDUM IN SUPPORT OF FRCP 60 (B) (5) MOTION FOR REVIEW AND VALIDATION OF REMEDY RELIEF FROM JUDGMENT

Original Plaintiff Orscini L. Beard, Plaintiff-Intervenor, Class Member Donald R. Johnson, Class Member Trudy M. White, and Plaintiff-Intervenor and Class Member, Gideon T. Carter, III, (hereinafter collectively referred to as "Plaintiffs") by and through the undersigned counsel, bring this Motion to this Honorable Court for leave pursuant to Local Rule 7(d) to substitute an updated version for the version attached to the original motion filed on October 7, 2024. Defendants' response to the original version is not due until January 24, 2025, and no prejudice can be shown. A proposed order is attached.

### Memorandum

To begin with, this case is of precedential importance regarding a 1991 remedial Section 2 institutional reform judgment with a curative Section 5[1] component setting aside illegal elections

---

[1] *Clark v. Roemer,* 500 U.S. 646 (1991).

1

under the Voting Rights Act of 1965, 52 U.S.C. § 10301 ("the VRA") of this Court[2]. Ever since, the Defendants have utilized this Court's judgment to hold elections to the Louisiana First Circuit Court of Appeal District 2, pursuant to this Court's April 17, 1992 final judgment.[3]

This Court created and ordered into effect two remedial subdistricts, Subdistrict 1, a multimember white-majority district, and Subdistrict 2, a single-member Black-majority district to elect District 2's four judges, because "subdistricts were the least intrusive"[4] method to remedy Defendants' violations. Consequently, after 33 years, only one of twelve judges serving on the First Circuit is Black. That Black judge is one of four judges elected, as of 2020 in a Black plurality District 2 (i.e., East Baton Rouge Parish) – from a single-member Black-majority subdistrict. Importantly, Black judges hold less than ten percent (.08%) of the judgeships on the First Circuit, though they constitute 29% of the circuit's overall population.

This Court's judgment references a specific description of the underlining and enabling four remedial single-member subdistrict model. A color map outlining those four subdistricts is located in Record Document 634-2. The boundaries of all four subdistricts, cities and the precincts listed are the boundaries recommended by Defendants' expert, as they existed on August 19, 1991.

According to the United States Census Bureau, District 2 is now 47 percent Black, 43 percent White and 10 percent Other race, as of 2020. Notwithstanding, now after 36 years, Louisiana's Legislature has never submitted a plan to this Court.[5] Notwithstanding, the Defendants will likely assert that during the past 33 years since the final remedial judgment, they have "done nothing wrong by doing nothing" to redistrict District 2. District 2's court method (i.e., two-

---

[2] See Exhibit 2 attached to Plaintiff's original memorandum.
[3] Record Doc. No. 665.
[4] Record Doc. No. 633, page 22.
[5] Record Doc. No. 633, page 5. "In November of 1989, the people of this State voted against the proposed revisions. Since that time, the Legislature has failed to take any further action or to respond in any fashion to the Section 2 violations found to exist by the court; nor has any request been made for additional consideration since the remand."

subdistricts equipopulous structure operationalized using 2020 Census data forms two extreme non-equipopulous subdistricts) to elect judges to the First Circuit is enforced in Louisiana by the Defendants in accordance with this Court's 1991 judgment. However, that 1991 judgment is incongruent with the passage of time and changed circumstances, to the extent that race unlawfully matters in electing District 2 judges.

Defendants throughout the 1991 remedial trial insisted, "court-created subdistricts should have the smallest population deviation possible"[6] to be lawful. Pursuant to this Court's 1991 judgment, District 2's judgeships are to be apportioned based on four single-member geographical areas predicated on the smallest deviation possible, consistent with the recommendations of the Defendants and Intervenor, the Louisiana District Judges Association's Post-Trial Brief on Remedy Phase.[7] After the 1991 judgment, starting in 2000, increases in population deviation levels in District 2's subdistricts are inconsistent with this Court's judgment, and simply intolerable by any one-man one-vote analysis.

Moreover, between 2010 and 2020, District 2 became a Black-plurality election district. District 2's Black citizens (i.e., voters, judges, and lawyers), because of racial bloc voting, requested their state to fix their new voting and electoral opportunity problem. Louisiana has not seen fit to redistrict District 2 to unstrap its Black citizens from the Court's electoral map, which now, as a remedy is racially offensive, discriminates against them unfairly, and dilutes their opportunity to participate equally in fair elections.

Today, despite the passage of time, District 2's Black and non-Black citizens do not have the same opportunities the VRA, the Fourteenth and Fifteenth Amendments to the U.S. Constitution were enacted to ensure. "Citizens of all races are entitled to have an equal chance of

---

[6] Record Doc. No. 694. Exhibit 11 attached to Plaintiff-Intervenors' Memorandum, page 2.
[7] Record Doc. No. 694.

3

electing candidates of their choice, but if they are fairly afforded that opportunity and lose, the law should offer no remedies." Senate Report at 193, U.S. Code Cong. & Admin. News 1982, p. 364.

Yet, the Defendants recently argued race has become irrelevant in Louisiana elections because of the passage of time and changed conditions[8]. In 2010, when District 2 went from a white majority to a white plurality (49-45-6%)[9], Louisiana refused to redistrict. In 2020, when Louisiana received its 2020 Census results, its "roadshow" work solicited comments that District 2 went from a white plurality to a Black plurality (47-43-10%)[10], Louisiana repeatedly mirrored their "doing wrong by doing nothing" behavior and disapprovingly refused to redistrict District 2. This behavior is not the type of behavior Blacks in District 2 expect of state officials in the 21st century, if race did not matter. Louisiana has made sure that Black wins in District 2 are not equal in this "sordid business" of "divvying us up by race."

Time has passed since this Court's judgment; some socio-political conditions have changed, and half of the subdistrict factors have changed in District 2; but race matters to Louisiana, structurally in population, to continue to authorize District 2's dominant[11] white minority to elect three of four judges. Relying solely on the Defendants' and the Legislature's pattern of behavior, their interaction with this Court's judgment, knowledge of decades-old census data, experience with Plaintiffs' claims, lack of interest and respect for minority rights, converges to establish a prima facie roadmap of an intent to discriminate against the Plaintiffs based on race.

---

[8] *Naire v. Landry*, Case: 24-30115 set for oral argument January 7, 2025, State of Louisiana's Reply Brief, Record Doc. No. 252, page 23.
[9] 49-45-6% (White, Black, Other)
[10] 47-43-10% (White, Black, Other)
[11] In political science, a 'dominant majority' is used to describe a minoritarianism. A political structure which a minority group of a population has a certain degree of primacy in that population's decision making, with legislative power or judicial power being held or controlled by a minority group rather than a majority that is representative of the population.
.

Consequently, under these circumstances alone, Louisiana had a legal obligation under the 1991 judgment, the VRA, and Fourteenth and Fifteenth Amendments to speak candidly and to rectify District 2's Black citizens' new electoral problem in America's constitutional democracy.

Thusly, Plaintiffs request an order allowing substitution of their originally filed memorandum to vindicate adequately their claims in support of their motion. Plaintiffs' filed their original motion nearly three months ago. Plaintiffs did not oppose Defendants' request for meaningful "breathing room"[12] to review the voluminous historical record, and the information presented in their motion and memorandum to obtain an extended period to prepare their response[13] to Plaintiff's Motion in Support of FRCP 60 (B) (5) Motion for Review and Validation of Remedy Relief from Judgment.[14] Plaintiffs were well aware of the Defendants and Louisiana's VRA perspectives and legal obligations in other important and relevant federal voting rights actions pending near or at the time of their recent filing.[15]

Plaintiffs' proposed updated memorandum differs largely from the original to better inform and sufficiently put Defendants on notice of their claims. It also updates the Court after further review of the docket sheets, historical trial and the appellate records, special pleadings, along with additional information obtained from research of state and public records, legislative and other judicial actions, and other cases and decisions relevant to this litigation. The outline of the memorandum remains the same. No additional exhibits are attached to the modifications in the

---

[12] Louisiana's Brief on page 2 *in State of Louisiana v. Callais*, No. 24-109 and *Robinson v. Callais*, No. 24-110 in the Supreme Court of the United States.
[13] See Record Docket No. 706.
[14] See Record Docket No. 701.
[15] See for example, *State of Louisiana v. Callais*, No. 24-109 and *Robinson v. Callais*, No. 24-110 in the Supreme Court of the United States; See also *Louisiana State Conference of the National Association for the Advancement of National Association for the Advancement of Colored People, et al. v. State of Louisiana, et al.*, Case 3:19-479 in the United States District Court for the Middle District of Louisiana. See also *Naire v. Landry*, Case: 24-30115 set for oral argument January 7, 2025 before the United States, 5th Court of Appeals. See also *Disability Rights Louisiana v, Nancy Landry*; Civil Action 3:24-cv-554, U.S. Middle District Court of Louisiana.

memorandum, only added references, citations, and argument is presented in the updated version. No prejudice can be shown. Plaintiffs' motion to substitute is filed well in advance of the response due by the Defendants.

Plaintiffs hope the updated memorandum will convince and help guide the Defendants to develop a refined approach to resolve precipitously Plaintiffs' Rule 60(b)(5) Motion voluntarily and jointly with the Plaintiffs. The revised memorandum can help Defendants understand the nature of their obligation to Plaintiffs, and the importance of their faithful exercise of their duties as state public officials representing all of the people of Louisiana. Plaintiffs desire that Defendants use their time wisely and devote public resources to effect a recalibrated lawful remedy for District 2's Black voters, judges, and lawyers. The updated memorandum is in the interest of judicial economy, likely to shorten Plaintiffs' reply memorandum, and may finally lead Louisiana to remedially investigate, and then stop doing wrong, by doing nothing. Plaintiffs pray their prophecy holds true.

As this Court stated in 1991, "it would be of great benefit to the court if the parties could stipulate," …. to confer with each other with the aim of entering a stipulation (a) as to the configuration of subdistricts, (b) as to the number of judges to be elected in each subdistrict and (c) as to the specific divisions which shall be allotted to each subdistrict purposes."[16]

Undersigned Counsel contacted Defendants' Counsels and certify they do not oppose the filing of the updated memorandum. For these reasons, Plaintiffs respectfully request the Court enter an order granting their motion. Attach is an updated version for substitution of the memorandum filed on October 7, 2024. It more accurately reflects the current state of affairs pending before this Honorable Court.

---

[16] See Findings of Fact and Conclusions of Law Remedy Phase at page 53, June 12, 1990. M.D. No. 86-435-A.

Dated: January 20, 2025

        Respectfully submitted,

        THE MALEY LAW FIRM
        /s/ MARTIN K. MALEY, SR.
        Martin K. Maley, Sr., Bar Roll No. 20933
        P. O. Box 3154 (70821)
        4707 Bluebonnet Boulevard, Suite B
        Baton Rouge, LA 70809
        Telephone: (225) 346-6781
        Facsimile: (225) 346-6788
        Email: mkmaley@eatel.net

        STEVE IRVING, LLC
        /s/ STEPHEN M. IRVING (of counsel)
        Stephen M. Irving, Bar Roll No. 07170
        P. O. Box 2108
        Baton Rouge, Louisiana 70832
        Phone: (225) 933-5993
        Fax: (225) 346-6788
        Email: steve@steveirvingllc.com

## CERTIFICATE

**I HEREBY CERTIFY** that, pursuant to this Court's Administrative Procedures for Filing Electronic Documents, Rule I (F)(3), that each signatory to this filing has agreed to the form and the substance of the document and that I have authority to submit this document electronically. Baton Rouge, Louisiana, this 20th day of January 2025.

                              /s/ *Steve Irving*
                              Steve Irving

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 20, 2025, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all parties who participate in electronic filing by operation of the Court's electronic filing system.

                              /s/ *Steve Irving*
                              Steve Irving

Ernest L. Johnson
ernestjohnson@lacapfund.com
Lead Attorney for Original Plaintiffs and Class Members

Angelique Freel (LSBA No. 28561)
James G. Evans (LSBA No. 351222)
Jeffery M. Wade (LSBA No. 36070)
Angelique.Freel@la.gov
Gary.Evans2@la.gov
Jeffrey.Wale@la.gov
Counsels for Honorable Jeffery "Jeff" Landry, Governor of Louisiana

Carey Tom Jones (LSBA No. 07474)
jonescar@ag.louisiana.gov
Counsel for Honorable Elizabeth "Liz" Murrill, Attorney General of Louisiana

Celia R. Cangelosi (LSBA No. 12140)
celiacan@bellsouth.net
Counsel for Honorable Nancy Landry, Louisiana Secretary of State

### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT LOUISIANA

| | |
|---|---|
| JANICE CLARK, *et al*,<br>    Plaintiffs, | CIVIL CASE: 3:86-cv-00435 |
| DONALD R. JOHNSON,<br>    Plaintiff-Intervenor | |
| TRUDY M. WHITE,<br>    Plaintiff-Intervenor | |
| GIDEON T. CARTER, III,<br>    Plaintiff-Intervenor | |
| Versus | |
| JEFFREY "JEFF" LANDRY, *et al*,<br>    Defendants | Judge John W. deGravelles<br>Magistrate Judge Scott W. Johnson |

## **ORDER**

Considering the Motion To Substitute An Updated Memorandum In Support of FRCP 60 (B) (5) Motion For Review and Validation of Remedy Relief From Judgment;

**IT IS SO ORDERED** that the Motion is Granted.

Baton Rouge, Louisiana, this _____ day of _____, 2025.

_____
JOHN W. DEGRAVELLES
UNITED STATES DISTRICT JUDGE
Middle District of Louisiana