**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

**JANICE G. CLARK, ET AL**
*Plaintiffs,*

**vs.**

**JEFF LANDRY, in his official capacity as Governor of the State of Louisiana, ET AL,**
*Defendants*,

**CIVIL ACTION**

**No. 86-435-A JWD-EWD**

**DISTRICT JUDGE**
**JOHN W. DEGRAVELLES**

**MAGISTRATE JUDGE**
**ERIN WILDER-DOOMES**

---

**PLAINTIFFS' RENEWED MOTION TO REOPEN *CLARK*, TO DECLARE ACT 243 UNENFORCEABLE AND FOR FURTHER EQUITABLE RELIEF**

In accordance with the Court's Order dated July 23, 2026 at Docket No. 757, Plaintiffs' herein file this Renewed Motion to Reopen *Clark*. Plaintiffs concede the subsequent matter of *Johnson v. Landry*, 3:26-cv-00210-JWD-EWD, can be brought in the present proceeding and address the merits therewith. Plaintiffs, additionally, assert ongoing constitutional violations of the Fourteenth and Fifteenth Amendments to the U.S. Constitution by Defendants. Plaintiffs further address the decision of *State of Louisiana v. Callais* and its impact on this litigation.

## I. INTRODUCTION

More than thirty-five years ago, this Court found (a) Louisiana's method of electing state judges in eleven "affected" judicial districts violated Section 2 of the Voting Rights Act (hereinafter sometimes referred to as "VRA"), and (b) a three-judge panel found concurrently that Louisiana regularly violated Section 5 of the VRA in judicial elections. Plaintiffs having established statutory Sections 2 and 5 VRA violations in East Baton Rouge Parish, this Court declined to find that Plaintiffs' extensive historical record of race discrimination, discrimination

in voting and election practices, voting rights evidence, and the state's intentionally un-precleared judicial changes violated the U.S. Constitution's Fourteenth and Fifteenth Amendments.

Plaintiffs having established statutory Sections 2 and 5 VRA violations, this Court permanently enjoined the use of **at-large** election systems. The Nineteenth Judicial District Court (hereinafter sometimes referred to as the "19th Judicial District Court" and "19th JDC"), the Family Court for the Parish of East Baton Rouge (hereafter referred to as the "Family Court"), and the Second District of the First Circuit Court of Appeal (hereinafter referred to as the "First Circuit") were redistricted into subdistricts. A judicial subdistrict is a smaller section of a larger court district, but the judge it elects hears cases from the whole district.

Plaintiffs' original complaint, as Black voters and as Black lawyers, framed the districts' existence as discriminating against them and alleged the state unlawfully diluted the voting power of Black voters, for no reason other than race. Plaintiffs, as members of the certified class of Black voters and of Black lawyers, "secured certainty that elections would [be held] in defined subdistricts that gave them a greater opportunity to elect candidates of choice and that the elections would be held expeditiously in those districts"[1] in their final judgments against the Defendants' predecessors in office. The equal opportunity to (a) elect candidates of their choice, and to (b) participate fairly in elections.

**A. Findings of *Clark***

"Section 2 of the Voting Rights Act of 1965 prohibits voting practices or procedures that discriminate on the basis of race, color, …." Plaintiffs asserted ongoing claims of vote dilution and that the judicial election "standard, practice, or procedure was enacted or maintained, at least in part, by an invidious purpose. *Clark's* judgments and remedy were based on both Section 2

[1] *Clark v. Landry*, 86-435, Rec. Doc. 720. at 18 (M.D. La.) (Opposition to Motion filed by Defendants, Governor Landry, Attorney General Murrill, and Secretary Landry, dated February 14, 2025, second full paragraph).

voting dilution findings and on Section 5 preclearance findings. The District Court found a violation of Section 2, *Clark v. Roemer,* 725 F. Supp. 285 (1988).[2] "Section 2 of the VRA is permanent and has no expiration date as do certain other provisions of the Voting Rights Act." A three-judge Court concurrently found repeated violations of Section 5 because voting law changes across judicial districts had not been submitted for judicial nor administrative preclearance.

Louisiana's failure to submit judicial voting law changes was purposeful, as the state's official policy. The undisclosed policy was willful and deliberate noncompliance with federal law.[3] Section 5 of the VRA required Louisiana to obtain preclearance **before** implementing any changes to judicial voting laws or procedures to ensure that such changes would not have a discriminatory purpose or effect. Absent preclearance, voting changes may not be implemented.

Violations of Section 5 had the discriminatory effect on Plaintiffs' right to vote to elect candidates of choice, effectively nullified their votes, and limited their opportunities to participate politically as lawyers, and as potential candidates in judicial elections for the 19th Judicial District, the First Circuit, and the Family Court, and deprived Plaintiffs' of opportunities to litigate successfully Section 2 and Section 5 VRA cases, and to establish proof of intent for Constitutional claims.

When Louisiana finally submitted the voting law changes to the U.S. Justice Department, the Attorney General declined to approve some of the changes. This Court initially issued a mandatory injunction but vacated that order and declined to enjoin elections using the unapproved

[2] The Court specifically found a Section 2 violation in the election of judges to the Nineteenth Judicial District, the East Baton Rouge Parish Family Court and Districts 2 and 3 of the First Circuit Court of Appeal. 725 F. Supp. at pp. 303-304.

[3] Handwritten Notes of First Assistant Attorney General, Kenneth C. DeJean written in 1997. Served as Chief Counsel, Louisiana Department of Justice in *Clark*. The Louisiana Department of Justice never informed this Court nor officially admitted this policy, neither was such voluntarily disclosed by First Assistant DeJean's until the note was discovered by Plaintiffs. *See Hall v. Louisiana*, Civil Action No. 12–00657. (M.D. La. 2015). *See* Rec. Doc. No. 288-6. No.146.

subdistricts. The U.S. Supreme Court unanimously reversed. *Clark v. Roemer*, 500 U.S. 646, 111 S. Ct. 2096, 114 L.Ed.2d 691 (1991). Having been thwarted in every attempt to use judicial elections that were racially discriminatory, the state accepted the interrelated judgements, entered into a Consent Decree, extending the remedy to address judicial districts for which the federal District Court had not fixed a remedy.

Shortly thereafter, the Louisiana Legislature codified those overlapping VRA remedial redistricting provisions into state law, and the Defendants' predecessors in office consistently administered judicial elections in all "affected" jurisdictions in accordance with the Court's judgment and consent decree. During that period, neither party sought modification nor dissolution of the judgments or the decree to modify their essential terms, until Plaintiffs filed their initial Motion to Reopen *Clark*. See Doc. 695; Doc. 714, and Doc. 717. Just as the Defendants herein had motioned to reopen *Chisom*[4] to modify that Court's remedy to redistrict the Louisiana Supreme Court.

Defendants willfully and deliberately avoided seeking the necessary pre-clearance, motion prayer-type relief to reopen *Clark*, as they did in *Chisom*, and thereby unilaterally violated federal law. Louisiana continues to impose unlawful legislative and executive distinctions on Plaintiffs

[4] *Chisom v. Jindal,* 2:86-04075, Rec. Doc. 257. No.207. Motion to Dissolve Consent Decree, where Governor Landry prayer on behalf of the State of Louisiana to dissolve *Chisom,* in order to redistrict the Louisiana Supreme Court.

PRAYER FOR RELIEF

WHEREFORE, the State of Louisiana prays that the Court reopen *Chisom, et al. v. Bobby Jindal*, et al., 86-cv-4075-SM/SS, and grant the State of Louisiana relief from the Judgment and Consent Decree entered in *Chisom* as follows:

A. Ordering that final remedy has been implemented in this case;
B. The State of Louisiana is no longer bound by the Consent Decree entered herein;
C. Terminating and Dissolving the Consent Decree; and
D. For such other relief as the Court deems equitable and proper.

based on race that infringe upon them and their rights as Black citizens, voters, judges, and judicial candidates.

Importantly, in the late 1980s, there were two vote dilution and race discrimination cases adjudicated against Louisiana and the Defendants' predecessors in office involving state court judgeships. *Clark's* plaintiffs challenged the method of electing state district judges and court of appeal judges. *Chisom*'s plaintiffs challenged the method of electing justices to the Louisiana Supreme Court. *Chisom* established a minority-subdistrict in New Orleans to elect a Black to the Supreme Court through a Consent Judgment approved in the Eastern District of Louisiana August 21, 1992, against the same defendants in *Clark*, the present action.

**B. The Present Action**

Just as Defendants declared in the Chisom case, this Court has never affirmatively ruled that its judgments and the consent decree in this case have been satisfied, vacated, or terminated. They "remain in place, and this Court maintains jurisdiction over them." The 19th Judicial District "remains subject to the three-decades old judgment and the Consent Decree at the heart of this case, which took effect in 1992 and effectively froze the districts after they were drawn" by this Court as remedial districts.

"Defendants agreed to hold special elections as soon as practicable in 1992 in majority black subdistricts …. All future regularly scheduled judicial elections were to be held from subdistricts under the settlement agreement. The settlement and related documents were to be submitted to the U.S. Attorney General with a request for withdrawal of all existing Section 5 objections."[5]

[5] *Clark v. Landry*, Defendants' *Opposition to Motion* to Plaintiffs' motion to reopen, No. 86-435, page 11.

After upholding their affirmative duty to the plaintiffs in Clark, the Defendants abandoned those judgments and the Consent Decree, selectively promoted House Bill 124's (herein referred to as "HB 124") passage, defended its legality in state court, and executed the mandates of Louisiana Act 243 (2025) under color of state law violating this Court's judgment and the consent decree.

*Clark* governs Act 243's mid-census redistricting plan modifying this Court's judgment and the decree. Under the circumstances and law of this case, Act 243 must be explicitly submitted, and approved by this Court. It is illegal to allow implementation of Act 243 to proceed. Defendants should have submitted Act 243 to this Court for approval.

Moreover, Act 243 is retrogressive, discriminates based on race, and as formulated results in a new racial dynamic (based on the same 2020 census information, population changes, and demographic data) across the Family Court and the First Circuit, along with the other "affected" jurisdictions.

As originally briefed in Plaintiffs' filings (see R. Doc. 737), on July 11, 2025, the Defendants and the Legislature unlawfully exercised ***de facto*** control over the Court's judgment, targeted the 19th JDC, and collaborated to undermine the Consent Decree, without first reopening *Clark*. Their noncompliant actions are willful and deliberate to (a) violate *Clark's* Sections 2 and Section 5 Voting Rights' judgments and the consent decree, (b) re-dilute Black voting power, and (c) re-discriminate racially against Plaintiffs' and other members of the class. Plaintiffs allege and can establish that Act 243 is ***ultra vires***, an invalid act beyond the lawful powers of the Defendants.

The Legislature and Defendants, had clear knowledge that for all "affected" court jurisdictions—specifically the 19th JDC—the implementation of decretal subdistricts constituted

a core "***froze[n]***" remedy mandated by this Court. Similarly like the State expressively acknowledged regarding the scope, effect and future impact of *Chisom's* Consent Judgment.

Louisiana judicially admitted in analogous pleadings regarding *Chisom's* Consent Judgment: "[t]he Supreme Court's District 7, however, remains subject to the three-decades old Consent Decree at the heart of this case, which took effect in 1992 and effectively froze the districts after they were redrawn in 1999." *Chisom v. Jindal*, 890 F.Supp. 696 (E.D. La.), R. Doc. 257. P. 3, ¶ 5. emphasis added). "The Consent Decree remains in place, and this Court maintains jurisdiction over it." *Chisom v. Jindal*, *supra*, R. Doc. 257, pp. 3, ¶ 6. (The State of Louisiana, through Jeff Landry, in his official capacity as Attorney General of the State of Louisiana in his Motion to Dissolve Consent Decree operationalized the word ***froze(n)*** three times to emphasize that no changes to the Consent Judgment could be made without first obtaining a judgment from the Court to redistrict the Louisiana Supreme Court.)

Act 243 (2025) eliminated the three remedial election subdistricts (codified in state law as "sections") for the 19th JDC, **reassigned by race** all judges and judicial divisions among reconfigured election sections, and also recreated an at-large judgeship that was prohibited by the Court's remedial judgment and Consent Decree. The Legislature enacted and the Defendants implemented these changes without formal notice to Plaintiffs. Neither did they file a motion to dissolve the Court's Section 2 remedial judgment nor the Section 5 curative component, nor without any determination by this Court that the judgments and the Consent Decree had become unnecessary, inequitable, were not retrogressive, or unlawful.

This Court must be willing to maintain authority over successors in office to hold the Defendants accountable for lack of compliance with its orders. See, *Police Ass'n of New Orleans Through Cannatella v. City of New Orleans*, 100 F.3d 1159 (1996). Plaintiffs have continually

relied on and been assured through Defendants' judicial confessions in *Terrebonne Parish Branch NAACP v. Jindal* 3:14-cv-00069 also referenced as *Fusilier v. Edwards*, (3:14-cv-69-JJB-SDD-EWD) (2014), *Campbell v. Edwards*, (3:17-cv-01261-JWD-EWD) (2017), and *Johnson v. Landry*, 3:26-cv-00210-JWD-EWD (2025) that Defendants recognize their legal obligation to comply with *Clark*.

Significantly, neither the Legislature nor the Defendants undertook a comprehensive reconsideration of all "guilty" districts and the effect of Act 243 on all of the "affected" judicial election systems created pursuant to *Clark*, as implemented through and expanded by the Consent Decree, in East Baton Rouge Parish. The Court's remedial election structures governs the Family Court and the First Circuit. The Legislature and the Defendants intentionally cause them to remain unchanged – all based upon race. The Legislature and the Defendants selectively altered only one component of this Court's remedial framework, leaving the remainder intact. The Defendants' enforcement of Act 243 selectively departed from the judgment and the consent decree. Their extralegal action underscores the extraordinary nature within Plaintiffs' renewed motion and demonstrates why Defendants are sued and why judicial intervention is now required.

The issue presently before the Court is therefore a narrow but important one. The question is not whether Louisiana possesses legislative authority to redraw judicial districts. Nor is the question whether East Baton Rouge's demographic changes justify modification of the Court's remedial judgment and changes to the Decree.

Rather, the threshold issue is whether Louisiana may materially alter and the Defendants may violate a permanent federal remedial judgment, which effectively eliminated its contract with Plaintiffs, without first obtaining affirmative remedial relief from the Court that entered that judgment. Federal law answers that question in the negative. Federal judgments remain binding

until modified or dissolved by the issuing court. When changed circumstances allegedly warrant modification of a remedial decree, the proper course is to petition the court for appropriate relief under the Federal Rules of Civil Procedure—not to disregard or materially alter the decree through unilateral legislative action.

Plaintiffs therefore respectfully request that this Court reopen these proceedings, exercise its continuing jurisdiction over its remedial judgment and consent decree, declare Act 243 unenforceable, and grant such further equitable and sanctionable relief as justice requires.

Plaintiffs additionally request this Court determine whether implementation of Act 243, affecting only the 19th Judicial District Court, is consistent with the Court's existing judgment and decree, and if not, interpret and re-enforce its judgment and decree through such equitable and sanctionable relief as is appropriate.

## II. THE COURT RETAINS CONTINUING JURISDICTION TO ENFORCE, INTERPRET, AND, IF NECESSARY, MODIFY ITS REMEDIAL JUDGMENT

This renewed motion presents a threshold question of judicial authority before it presents a question of election law. Plaintiffs do not ask this Court to decide, in the first instance, whether Act 243 ultimately complies with the Constitution or the Voting Rights Act. Nor do Plaintiffs ask the Court to determine immediately whether changed factual or legal circumstances warrant modification of the remedial framework established in *Clark*. Rather, Plaintiffs seek a determination that those questions are juridical and indispensably decided by the Court that entered the judgment, not unilaterally by one of the parties bound by that judgment.

Federal courts possess both the inherent equitable authority and the continuing jurisdiction necessary to enforce, interpret, and, where appropriate, modify their own judgments. That authority is particularly significant where the judgment establishes an ongoing remedial framework governing future governmental conduct. The *Clark* judgment and the subsequent

Consent Decree were not limited to resolving a past controversy they prescribed the judicial election systems under which future elections would be conducted in the "affected" courts. The Consent Decree itself reflects the parties' agreement to implement the Court's remedial framework and to proceed under that framework going forward.

The Supreme Court has long recognized that institutional decrees remain subject to the issuing court's continuing equitable authority. At the same time, those decrees remain binding until modified or dissolved by judicial order. Thus, while changed factual or legal circumstances may justify modification of an injunction or consent decree, those changes do not permit a party to disregard or materially alter the decree without first seeking relief from the issuing court. Plaintiffs' renewed motion relies upon this well-established principle and the authorities recognizing a federal court's continuing jurisdiction over its decrees.

The procedural posture of this case reflects precisely that principle. For more than thirty years, Louisiana implemented judicial elections under the remedial framework established in *Clark*. During that period, the Legislature repeatedly acted within that framework when creating additional judgeships and conducting elections. At no point did the Defendants seek dissolution of the Court's decree or seek judicial approval to materially restructure the election sections established by the Court.

Plaintiffs contend that Act 243 marks the first significant departure from that historical practice. According to the pleadings, the Legislature substantially altered the remedial election structure governing the 19th Judicial District Court while leaving intact the *Clark* election structures applicable to the Family Court and the First Circuit. Whether those actions were lawful under the Court's judgment is a question that falls squarely within this Court's continuing

jurisdiction because it concerns the scope, operation, and continued effect of the Court's own decree.

The Court's exercise of jurisdiction in this matter therefore does not depend upon a determination that Act 243 is unconstitutional. Instead, it depends upon the existence of a continuing federal judgment that remains operative unless and until modified by the Court that entered it. Plaintiffs respectfully submit that, before the State may implement legislation materially departing from that judgment, the Court must determine whether such legislation is consistent with the decree or whether modification of the decree is warranted under the governing standards.

The Court's continuing jurisdiction is particularly important here because Defendants have suggested that recent developments in federal voting-rights jurisprudence, including the Supreme Court's decision in *Louisiana v. Callais*, affect the continued operation of the *Clark* remedial framework. Plaintiffs do not dispute that intervening Supreme Court precedent may be relevant to the continued administration of a long-standing institutional decree. Indeed, Rule 60(b)(5) expressly contemplates that significant changes in law may warrant modification of an injunction. The issue presented by this motion, however, is not whether *Callais* requires modification of the *Clark* decree. The issue is who decides that question. Plaintiffs respectfully submit that the answer is this Court. Additionally, and more importantly, this is not a new Section 2 case where the new standard of *Callais* would control. This case is only an enforcement of an existing judgment and decree.

If *Callais* represents a significant change in governing law, Defendants were free to invoke Rule 60(b) and request this Court determine the decree's continued viability. They were not free to determine for themselves that portions of the decree for East Baton Rouge no longer governed

future elections as to the 19th JDC, and to implement a materially different election system without judicial authorization.

Accordingly, Plaintiffs request that the Court exercise its continuing jurisdiction to determine the effect, if any, of subsequent legal developments upon the *Clark* remedial framework and to decide whether Act 243 may be implemented consistently with the Court's existing judgment.

## III. CONSTITUTIONAL CLAIMS

### A. Chief Judge Parker Did Not Rule on Plaintiffs' Constitutional Claims.

Under the Constitutional Avoidance Doctrine, Chief Judge John Parker held in *Clark*, 725 F.Supp. 285, at p. 298, "[b]ecause the court finds violations of Section 2 of the Voting Rights Act … there is no need to address the constitutional violations alleged." This avoidance has now resulted in these Plaintiffs requesting the instant Court to fully examine the evidentiary record in *Clark,* declare that the evidence provides proof of constitutional "intent" violations in accordance with *Bolden v. Mobile*, 446 U.S. 55 (1980), and in accordance with *Callais* – declare that the evidence in *Clark* supports a strong inference that Louisiana intentionally drew or maintained its districts to afford Black voters and Black candidates less opportunity in the "guilty" judicial districts because of their race.

Moreover, Plaintiffs contend ongoing violations from the very fact that the Defendants selectively only chose to redistrict one "affected" jurisdiction, to the benefit of White judicial candidates and White voters, and not to the similarly situated Family Court and the First Circuit, and other "affected" courts, to the benefit of Black candidates and Black voters – the Defendants have continued violating Plaintiffs constitutional rights. Therefore, it is incumbent upon this Court to now make those findings.

More importantly, Plaintiffs will suffer irreparable harm if, as the Defendants may allege, *Callais* now burdens *Clark's* Plaintiffs to either a) show discriminatory intent to prove a constitutional violation, or b) show a lack of correlation between race and party affiliation. Plaintiffs prevailed on their Section 2 vote dilution claim and on their Section 5 claim, and the burden has shifted to the Defendants to disprove violations. *Callais* new standard only has prospective application.

However, there is evidence of discriminatory intent in the record when *Clark* was litigated and when Plaintiffs initially filed to reopen *Clark*, R. Doc. 695, to show that not only did the Defendants violate Sections 2 and 5 of the VRA but that the Defendants willfully and deliberatively violated the VRA, the Fourteenth and Fifteenth Amendments to the Constitution. The existing record establishes constitutional violations.

**B. Continued Fourteenth Amendment Violations**

Plaintiffs further allege that the enactment and implementation of Act 243 violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiffs contend that the Legislature willfully and deliberately reconfigured only the 19th Judicial District Court while declining to address similarly situated judicial districts governed by the *Clark* remedial framework, despite alleged demographic changes affecting those jurisdictions.

Plaintiffs further allege that the sequence of racially discriminatory legislative events and Defendants' inconsistent actions in the treatment of other judicial districts, such as District 2 of the First Circuit, District 1 of the Fifth Circuit,[6] the 32nd Judicial District,[7] the 40th Judicial District,[8] and with the implementation of Act 243 support an inference of intentional

---

[6] *See* Governor Landry's Veto Letter to HB 926 dated June 20, 2024 at https://www.legis.la.gov/Legis/ViewDocument.aspx?d=1382559.
[7] *See Terrebonne Parish Branch NAACP v. Jindal* 3:14-cv-00069.
[8] *See Campbell v. Edwards*, 2:17-cv-01261.

discrimination under the analytical framework established in *Village of Arlington Heights v. Metropolitan Housing Development Corp*. 429 U.S. 252 (1977). These allegations are set forth in Plaintiffs' pleadings and, if this action is reopened, may warrant further factual development before the Court reaches the merits.

### C. Continued Fifteenth Amendment Violations

Plaintiffs likewise allege that Act 243 intentionally impairs the voting strength of Black citizens and electoral opportunities of the class of judicial candidates through the restructuring of judicial election sections established pursuant to *Clark*. Those allegations are intertwined with Plaintiffs' contention that the Legislature selectively altered only one component of the federal remedial framework while leaving comparable judicial election structures unchanged.

Whether those allegations ultimately establish a violation of the Fifteenth Amendment is a merits question reserved for later proceedings. At this stage, they demonstrate that reopening this action will permit the Court to determine whether Defendants' implementation of Act 243 is ongoing race discrimination and whether it has created constitutional issues distinct from, but related to, enforcement of the original decree.

### D. The Current Configuration of the First Circuit

The evidence will show that the Legislature has rejected continuous attempts to reapportion and/or to redistrict the First Circuit since 2011. Since 2011, three vacancies have existed in Election Section 2 of District 2 of the First Circuit. All Plaintiffs were qualified electors and could have qualified as viable candidates, if the Legislature had chosen either to redistrict fairly or to reapportion the First Circuit. Since 2011, the State has continuously harmed Plaintiffs' as voters to participate equally to vote for the candidate of their choice in District 2 and as qualified Black lawyers for that office. In the 2011 First Extraordinary Session, House Bill 7 proposed to change

the composition of election sections one and two. It provided two judges to be elected from Section one and two from Section 2. Election Section 2 would become a majority-minority district.

In addition, in the 2011 First Extraordinary Legislative Session, based on 2010 Census data, HB 40 was filed to provide for an additional judgeship for the First Circuit. Judges on the First Circuit supported the "concept" of an addition of a second minority judgeship as provided in the Bill; but resolved to oppose the HB 40 and to rely on the Judicial Council of Louisiana's recommendation. The Committee did not advance the bill. House Bill 44 was pre-filed but was voluntarily withdrawn. House Bill 44 as to the First Circuit proposed that the judgeship designated as Division B of First district be assigned to section three for election purposes. Section 3 would become a majority-minority district.

House Bill 521 was pre-filed April 15, 2011, in the Regular Session. House Bill 521 was presented in the House and Governmental Affairs Committee but was involuntarily deferred to the committee.

In the 2019 Regular Legislative Session, forecasting census estimates of demographic changes in East Baton Rouge Parish, HB 519 was filed to redistrict the First Circuit. House Bill 519 was referred to House Judiciary Committee, reported favorably, set for floor debate, but was returned to calendar.

In the 2022 Regular Legislative Session, SB 353 was filed to redistrict the First Circuit. Senate Bill 353 passed the Senate Committee on Senate and Governmental Affairs but was returned to the calendar, subject to call.

In the 2023 Regular Legislative Session, SB 168 was filed to redistrict the First Circuit. Senate Bill 168 passed the Senate Committee on Senate and Governmental Affairs but was

returned to the calendar, subject to call, as the amendments made on the Senate Floor were not accepted.

Again, in the 2024 Regular Legislative Session, SB 399 was filed to redistrict the First Circuit. Senate Bill 399 passed the Senate Committee on Senate and Governmental Affairs, but was returned to the calendar, subject to call.

Lastly, in the same 2025 Regular Legislative Session, HB 367 was filed to redistrict the First Circuit. During testimony regarding HB 142 (Act 243), a supporter testified that the First Circuit was also imbalanced and needed to be redistricted. "Ms. Marcelle does have a bill, as we said, that – that seeks to change the First Circuit, which is a problem. The First Circuit is even more imbalanced," than the 19th JDC.

Representative Marcelle stated "[s]o I'm wondering if you all are supportive of making sure that when we're making sure that things are equal, let's -- let's do it across the board. And let's not vote one way on one bill and another way on another one …"

However, that is exactly what the Legislature did. They voted in favor of HB 124 (Act 243) to redistrict the 19th JDC, but not in favor of HB 367 to redistrict District 2, along racial lines in both chambers. The purpose of HB 124 was to elect reliably 7 to 8 white judges on the 19th JDC. The purpose of HB 367 was to elect reliably 2 Black judges and 2 white judges out of 4 judges in District 2 of the First Circuit.

In summary, the testimony offered in support of Act 243 specifically discussed proposed subdistricts for the First Circuit. Presently there are three First Circuit judges elected from the majority White subdistrict and one judge elected from the majority Black subdistrict. The failure to reapportion or redistrict the First Circuit subdistricts plainly shows that the Legislature acts

when White voting strength is diluted but does not act when Black voting strength is diluted. This is further evidence of unconstitutional racial gerrymandering of judicial elections.

Plaintiffs' claims are supported by the evidentiary framework laid out in *Thornburg v. Gingles*, 478 U.S. 30 (1986), which provides a three-pronged test for proving vote dilution under Section 2:

1. The minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district;
2. The minority group must be politically cohesive; and
3. The majority must vote sufficiently as a bloc to defeat the minority's preferred candidate.

As applied here, substantial and compact White populations in areas within the First Circuit—East Baton Rouge Parish—could form two majority-minority districts. The Defendants' refusal to acknowledge or act upon this fact results in ongoing vote dilution, packing and cracking Black voters, denying Black voters an equal opportunity to elect candidates of their choice, and unlawful race discrimination. Act 243 does not disturb this reality and does not absolve the State of its broader constitutional and statutory obligations.

**E. The Current Configuration of the Family Court**

The evidence will show that the Legislature has rejected several attempts to redistrict the Family Court since 2022. Prior to enactment of Act 243, Plaintiffs formally urged the Legislature to redistrict the Family Court lawfully, or reconsider Act 243's maps, asserting they heavily favor White voter demographics and disenfranchise Black preferred candidates, to no avail.

The testimony offered in support of Act 243 specifically discussed proposed subdistricts for the Family Court. Presently there are four Family Court judges, two judges elected from a majority White subdistrict, one judge elected from single member majority White subdistrict, and one judge elected from the majority Black subdistrict. The failure to redistrict and to reapportion the Family Court subdistricts plainly shows that the Legislature acts when White voting strength

is diluted but does not act when Black voting strength is diluted. This is further evidence of Defendants' unconstitutional racial discrimination and racial gerrymandering of Plaintiffs' judicial districts.

The Family Court, District 2 of the First Circuit, the 19th JDC have materially everything in common. They are "affected" East Baton Rouge jurisdictions and similarly situated election districts, except for structural inequality based on the race of the judges elected and the opportunity to be elected to that particular court. Several legislative attempts between 2022 and 2026 to increase Black representation and ensure electoral equity in Louisiana's judicial districts failed to become law. Family Court legislation included Senate Bill 395 (2022), SB 400 (2024), HB 442 (2026), along with House Floor Amendment to Act 243.[9] Introduced to reapportion the election sections for the Family Court to address representation concerns. Despite moving through parts of the process, these measures failed to achieve final enactment.

In summary, this Court noted in *Clark* in 1991 "that District 2 of the First Circuit consists of East Baton Rouge Parish, exactly the same election district as that of the trial courts, the Nineteenth Judicial District Court and the Family Court for the Parish of East Baton Rouge."[10]

## IV. AFFECT OF *CALLAIS*

*Callais* is a consolidation of an appeal of a three-judge panel decision and the review by writ of two 5th Circuit actions in *Robinson v. Ardoin*, (No. 22-30333, 5th Cir. 2023). *Robinson* was a Voting Rights Act challenge to the original congressional district map created by the Louisiana Legislature after the 2020 census. The court in *Robinson* held this congressional district map likely

---

[9] The proposed amendment is identified as HFAHB124 3645 3715 and can be found at https://www.legis.la.gov/Legis/ViewDocument.aspx?d=1419271. House Video On-Demand of the bill on the House Floor heard on May 16, 2019 at https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2025/May/0529_25_25RS_Day242. Starting at 16:58 and ending at 42:15. The proposed amendment included both the First Circuit and the Family Court.

[10] *Clark v. Roemer*, 86-435, page 26 (M.D. La.) (Supplemental Findings of Fact and Conclusions of Law).

was a violation of the VRA and granted preliminary relief. The Legislature responded by adopting a new congressional district map that created two majority minority districts. This map was challenged as racial gerrymandering in *Callais*. This claim was tried before a three-judge panel which found that the congressional district map adopted in response to *Robinson* was racial gerrymandering.

The Supreme Court added the burden of proof of Plaintiffs in new Section 2 VRA vote dilution cases an obligation to disprove political gerrymandering as a basis for the challenged districts. East Baton Rouge was largely a one-party Democratic stronghold between 1890 and 1990. If *Callais* applies, which the Plaintiffs contend it does not, this court must evaluate two things in considering approval of the modification of the *Clark* subdistricts made by Act 243. First, the Court must consider whether Act 243 was racial gerrymandering. If racial gerrymandering is shown, the new subdistricts are illegal.

> Laws that explicitly discriminate on the basis of race, as well as those that are race neutral on their face but are unexplainable on grounds other than race, are of course presumptively invalid. *Rucho v. Common Cause*, 588 U.S. 684, 700, 139 S. Ct. 2484, 2496, 204 L. Ed. 2d 931 (2019) (emphasis added)

Although the Plaintiffs do not concede that the instant posture of the case warrants a *Callais* Section 2 framework, if the Court concludes that it does, the Plaintiffs submit the burden remains with the State to prove politically gerrymandering took place.

Alternatively, if the Court concludes that Act 243 is not racial gerrymandering, the Court must then determine if the new subdistricts comply with Section 2 of the VRA. A party challenging Act 243's subdistricts as a violation of Section 2 may be obligated to disprove political gerrymandering as a basis for the new subdistricts. The Supreme Court in *Callais* stated that Plaintiffs must disprove political gerrymandering. *Callais* was considering a federal election, which is subject to the Elections Clause of the Constitution. The Supreme Court, in *Rucho v.*

*Common Cause*, 588 U.S. 684, 701, 139 S. Ct. 2484, 2497, 204 L. Ed. 2d 931 (2019), has expressly allowed political gerrymandering in federal elections.

> "a jurisdiction may engage in constitutional political gerrymandering." *Hunt v. Cromartie*, 526 U.S. 541, 551, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (citing *Bush v. Vera*, 517 U.S. 952, 968, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996); *Shaw v. Hunt*, 517 U.S. 899, 905, 116 S.Ct. 1894, 135 L.Ed.2d 207 (1996) (*Shaw II*); *Miller v. Johnson*, 515 U.S. 900, 916, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995); and *Shaw I*, 509 U.S. at 646, 113 S.Ct. 2816).

While the cited cases all involve congressional elections, the Court in *Rucho* also called attention in *Gaffney v. Cummings*, 412 U.S. 735, 737, 93 S. Ct. 2321, 2323, 37 L. Ed. 2d 298 (1973), which involved state legislative district reapportionment thereby suggesting that the U.S. Constitution allows political gerrymandering in state elections and political gerrymandering is a defense to VRA claims involving state elections.

However, in Louisiana, both racial and political gerrymandering are prohibited by the state Constitution.

> Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
> La. Const. Ann. art. I, § 3 (emphasis added)

Any legislative effort to political gerrymander judges would also be illegal under another section of the Louisiana Constitution. Louisiana citizens are guaranteed equal access to the impartial courts.

> Section 22. All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
> La. Const. Ann. art. I, § 22

Lastly, the majority opinion in *Callais* made it clear that *Callais* did not conflict with *Thornburg v. Gingles* (1986). Even under the prospective *Gingles* framework, the evidentiary record in *Clark* easily comply with *Callais'* new evidentiary burden. In the event this Court disagrees, it procedurally and substantially prejudices Plaintiffs not to reopen *Clark* to enter constitutional findings. But for the 1988 application of the Constitutional Avoidance Doctrine, the record in *Clark* also establishes violations of the Fourteenth and Fifteenth Amendments.

## V. THE SUBDISTRICTS OF ACT 243 ARE ILLEGAL RACIAL GERRYMANDERING PROHIBTED BY *CALLAIS*

The *Clark* litigation changed the election of judges for the 19th Judicial District Court from a system where each judge was elected at large to a system where judges were elected from three subdistricts of the parish. The Court order divided East Baton Rouge Parish into three subdistricts. Subdistrict 1 (majority-minority) was in the central part of the city; District 2 (majority white) was the northern part of the parish, and District 3 (majority white) was the southern part of the parish.

In the beginning in 1992, only Subdistrict 1 elected Black judges, Subdistricts 2, and 3 elected only White judges. Subdistrict 2 began in 2019 and through the last election in that subdistrict in 2022 elected four Black judges. A demographic consequence of migration. Prior to Act 243, of the fifteen judges elected on the 19th JDC, nine of whom are Black and six of whom are White. All were elected pursuant to *Clark's* subdistrict plan. That demographic shift is the predominant driver behind Act 243.

Act 243 created two subdistricts and one at large district, elected from the entire parish. The new Section 1 includes the original Section 1, the northeast part of the parish, and selected sections of the rest of the parish. The new Section 2 includes all the old Section 3 and the northeast part of the parish.

The Legislature was very clear in the discussions during consideration of what became Act 243 that race was a major consideration in creating the new districts and the dominant factor in apportionment. The evidence on consideration of Act 243 in *Clark will* show that there were only two considerations for the adoption of the bill, which became Act 243. First, it was noted that there was a substantial population difference between Subdistrict 1 and Subdistricts 2 and 3.

The evidence presented at the legislative hearings by the bill proponent showed that when the population balance of the three subdistricts was considered, Subdistrict 1 had a population of 93,834 (2020 census), Subdistrict 2 had a population of 153,800 voters and Subdistrict 3 had a population of 209,136. There are several ways of considering this data.

First the two subdistricts from which all the Black judges on the bench were elected were collectively 25% bigger population wise that the White Subdistrict. The difference in land area is even more stark as a map of the then existing districts shows that 2/3 of the land area of the parish is in the combination of Subdistrict 1 and Subdistrict 2.

The two subdistricts created by Act 243 are also interesting. The districts are anything but compact and contiguous. The eastern subdistrict starts out in the northeast part of the parish and runs south narrowing at it approaches the center of the parish, with only the barest connection with the remaining part of the eastern subdistrict, then the subdistrict consumes the entire southern part of the parish. There are obvious efforts to deviate the subdistrict boundaries to pick up White communities which are surrounded by African American communities.

Collectively this evidence shows an obvious effort to pack White voters into a single subdistrict and racially divide the electorate. That is racial gerrymandering.

Act 243 unlawfully restructures the 19th JDC from three subdistricts into two, and an at large district, which is not in compliance with *Clark,* let alone with Section 2. However:

- It applies only to the 19th JDC and does not alter or evaluate the configuration of the First Circuit;
- It demonstrates that the State is capable of redistricting to address population discrepancies, but only when necessary to reduce the effect of the voting power of Blacks and to increase that of white voters; but is selective in its compliance; and
- It leaves untouched the racially dilutive structure of the First Circuit, where Black voters remain packed and cracked across these malapportioned subdistricts.

As the Supreme Court made clear in *United States v. Fordice*, 505 U.S. 717 (1992), partial compliance does not terminate federal oversight when vestiges of discrimination remain. Just as Mississippi could not maintain traceable policies of segregation in its universities, Louisiana may not preserve an appellate court map that continues to marginalize Black voting strength.

## VI. Reopening *Clark* Will Permit the Court to Address Both Enforcement and Constitutional Issues in a Single Proceeding

Reopening this action will permit the Court to address, in an orderly manner, two related but distinct questions. First, the Court may determine whether Defendants materially departed from the *Clark* remedial judgment and decree without first obtaining judicial approval.

Second, if appropriate, the Court may determine whether Act 243 gives rise to new constitutional violations under the Fourteenth Amendment, the Fifteenth Amendment, and the Equal Protection Clause, including Plaintiffs' racial gerrymandering claims.

Resolving those issues within the reopened *Clark* proceedings will promote judicial economy, preserve the integrity of the Court's prior judgment, and provide a single forum in which the effect of Act 243 and any intervening legal developments—including *Louisiana v. Callais*—may be evaluated on a complete evidentiary record.

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

1. Grant this Motion and reopen these proceedings pursuant to Federal Rule of Civil Procedure 60(b);
2. Order Oral Argument as the Plaintiffs believe argument will assist the Court;
3. Exercise its continuing equitable jurisdiction to interpret, enforce, and, if appropriate, modify the remedial judgment and Consent Decree entered in *Clark v. Edwards*;
4. Declare the State of Louisiana is bound by the final judgments and the Consent Decree entered in *Clark v. Edwards*;
5. Declare Act 243 may not lawfully be implemented without prior modification of the Court's remedial decree;
6. Determine the effect, if any, of intervening legal developments, including *Louisiana v. Callais*, upon the continued operation of the *Clark* remedial framework;
7. Declare that any modification of the Court's remedial judgments and decree must occur through judicial proceedings before the issuing court and not through unilateral legislative or executive action;
8. Enter such preliminary or permanent equitable relief as may be necessary to preserve the Court's jurisdiction, and the integrity of its judgment pending further proceedings;
9. Establish an expedited scheduling order in light of the approaching 2026 judicial election cycle, including deadlines for responsive pleadings, briefing, discovery (if necessary), and an evidentiary hearing;
10. Preserve for adjudication upon reopening Plaintiffs' claims that Act 243 and its selective implementation violate the Fourteenth Amendment, the Fifteenth Amendment, the Equal Protection Clause, and the prohibition against unconstitutional racial gerrymandering,

together with Plaintiffs' claims under Section 2 of the Voting Rights Act, to the extent those claims remain viable under governing law after consideration of *Louisiana v. Callais*;

**Respectfully submitted,**

THE MALEY LAW FIRM
/s/ MARTIN K. MALEY, SR.
Martin K. Maley, Sr., Bar Roll No. 20933
P. O. Box 3154 (70821)
4707 Bluebonnet Boulevard, Suite B
Baton Rouge, LA 70809
Telephone: (225) 346-6781
Facsimile: (225) 346-6788
Email: mkmaley@eatel.net

STEVE IRVING, LLC
/s/ STEPHEN M. IRVING (of counsel)
Stephen M. Irving, Bar Roll No. 07170
P. O. Box 2108
Baton Rouge, Louisiana 70832
Phone: (225) 933-5993
Fax: (225) 346-6788
Email: steve@steveirvingllc.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 19, 2026, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all parties who participate in electronic filing by operation of the Court's electronic filing system.

/s/ Steve Irving
Steve Irving

**Respectfully submitted**,

THE MALEY LAW FIRM
/s/ MARTIN K. MALEY, SR.
Martin K. Maley, Sr., Bar Roll No. 20933
P. O. Box 3154 (70821)
4707 Bluebonnet Boulevard, Suite B
Baton Rouge, LA 70809
Telephone: (225) 346-6781
Facsimile: (225) 346-6788
Email: mkmaley@eatel.net

STEVE IRVING, LLC
/s/ STEPHEN M. IRVING (of counsel)
Stephen M. Irving, Bar Roll No. 07170
P. O. Box 2108
Baton Rouge, Louisiana 70832
Phone: (225) 933-5993
Fax: (225) 346-6788
Email: steve@steveirvingllc.com

*Attorneys for Plaintiffs*